UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MICHAEL L. ALLEN,
     Petitioner,

vs.                            Case No.: 4:23cv226/MW/ZCB

RICKY D. DIXON,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a federal habeas corpus case filed under 28 U.S.C. § 2254. (Doc. 1). Respondent has answered the petition, and Petitioner has replied. (Docs. 9, 11). For the reasons below, Petitioner is not entitled to habeas relief.[1]

## I.    Factual Background

Petitioner, Michael L. Allen, had been in a relationship with Lanedra Williams. Ms. Williams ended that relationship approximately one week prior to May 25, 2017. (Doc. 9-2 at 52-53). After breaking up

---

[1] This matter may be resolved without an evidentiary hearing. Rule 8(a), Rules Governing Section 2254 Cases.

with Petitioner, Ms. Williams began a friendship with Vontrez Moore. (*Id.* at 54).

After learning that Mr. Moore had been talking with Ms. Williams, Petitioner sent a Facebook message asking Mr. Moore to call him. (*Id.* at 111-13).  Mr. Moore made the call, during which Petitioner said things that Mr. Moore perceived as threats. (*Id.* at 112-14).  The two men agreed to meet each other outside a barbershop on May 25, 2017. (*Id.* at 113-14, 121).

During the meeting, Petitioner questioned Mr. Moore about the status of his relationship with Ms. Williams. (*Id.* at 114-15).  Referring to Ms. Williams, Petitioner said: "That's mine, pussy n***er, that's mine." (*Id.* at 115-16).  Petitioner challenged Mr. Moore to call Ms. Williams and let him listen in on their conversation, but Mr. Moore refused. (*Id.* at 116-17).  As the meeting ended, Petitioner told Moore, "you probably will be hearing more from me again." (*Id.* at 117).  Mr. Moore then got in his car and left. (*Id.*).

Mr. Moore subsequently called Ms. Williams, and they agreed to meet up at Jack McLean Park. (*Id.*).  Ms. Williams arrived at the park

2

first and backed into a parking spot.  (*Id.* at 55, 117).  Mr. Moore parked across from her, exited his car, and walked over to the driver's side window of Ms. Williams' SUV to talk with her.  (*Id.*).  Soon after they started talking, Petitioner unexpectedly pulled up in his truck.  (*Id.* at 56, 117-18).  Petitioner parked his truck in front of Ms. Williams' SUV, blocking her in.  (*Id.* at 56).

Petitioner got out of his truck, looked at Ms. Williams, pointed at Mr. Moore, and demanded, "is this your man, huh? . . . This who you done left me for[?]"  (*Id.* at 56-57, 118).  Petitioner then reached into Ms. Williams' open car window, grabbed her cell phone, and slammed it to the ground with such force that it broke.  (*Id.* at 57, 71-73, 118-20).[2]

Petitioner then turned to Mr. Moore and punched him.  (*Id.* at 120).  Mr. Moore fell to the ground and hit his head.  (*Id.* at 120-21).  Petitioner then began kicking Mr. Moore.  (*Id.* at 120-21).  Mr. Moore's phone, as

---

[2] Although both Ms. Williams and Mr. Moore testified that Petitioner reached into Williams' SUV and grabbed her phone, they gave slightly different versions of where her phone was when Petitioner grabbed it. Mr. Moore testified that he recalled the phone being in Ms. Williams' hand, and that Petitioner first grabbed Ms. Williams' arm and then her phone.  (Doc. 9-2 at 118-19).  Ms. Williams testified that her phone was on her thigh, not in her hand.  (*Id.* at 57, 71-73).

well as a taser, fell out of his pocket during the scuffle. (*Id.* at 121). Mr. Moore never brandished the taser before it fell out of his pocket. (*Id.* at 58, 121). Petitioner picked up the taser, and Mr. Moore fled to his car. (*Id.* at 121-22).

Ms. Williams then backed her SUV over the curb, maneuvered it around Petitioner's truck, and circled the parking lot. (*Id.* at 58-59, 82). Petitioner got into his truck, put it in gear, and plowed his truck into the side of Ms. Williams' SUV. Petitioner's truck hit Ms. Williams' SUV with such force that the airbags deployed. (*Id.* at 58-60, 106). Mr. Moore drove to a nearby school and used a bystander's phone to call 911. (*Id.* at 121-22).

One of the responding police officers photographed Mr. Moore's injuries, which included a knot on his head, bruised ribs, and scrapes. (*Id.* at 122-23). Mr. Moore received treatment from EMS for those injuries. (*Id.* at 146-47). Another responding police officer, Officer Aldridge, interviewed Petitioner and Ms. Williams. (*Id.* at 84-87). During the investigation, officers photographed Ms. Williams' broken cell phone and the damage found on both her SUV and Petitioner's truck. (*Id.*

4

at 60, 87-88). Officer Aldridge examined the damage to the vehicles and noted that Petitioner's truck did not simply sideswipe Ms. Williams' SUV; rather, it directly hit it. (*Id.* at 106).

The incident was captured on the park's video surveillance cameras. (*Id.* at 31-36). And Petitioner was subsequently charged with burglary of a conveyance with assault (Count I), aggravated battery with a deadly weapon (Count II), misdemeanor criminal mischief (Count III), and misdemeanor battery (Count IV). (Doc. 9-1 at 22-23). Petitioner's case proceeded to a jury trial. (Doc. 9-2). The jury convicted Petitioner of the lesser offense of burglary of an occupied conveyance as to Count I and as charged on Counts II through IV. (Doc. 9-1 at 59-60; Doc. 9-2). The trial court sentenced Petitioner—a recidivist with a lengthy record— to twelve years' imprisonment. (Doc. 9-1 at 64-74).

## II.    Procedural History

Petitioner appealed his conviction to the Florida First District Court of Appeal (First DCA). (Doc. 9-3). That court affirmed. (Doc. 9-6); *Allen v. State*, 279 So. 3d 646 (Fla. 1st DCA 2019). Petitioner then sought state postconviction relief under Florida Rule of Criminal Procedure

3.850. (Docs. 9-7, 9-8, 9-9). The trial court held an evidentiary hearing on four of Petitioner's seven claims before ultimately denying them all. (Docs. 9-10, 9-11, 9-12). Petitioner appealed to the First DCA, which affirmed. (Docs. 9-13, 9-15); *Allen v. State*, 359 So. 3d 1264 (Fla. 1st DCA 2023).

Petitioner then turned his postconviction efforts to federal court by filing the current habeas corpus petition under 28 U.S.C. § 2254. (Doc. 1). The § 2254 petition raises three claims—two ineffective assistance of trial counsel claims and one challenging the denial of his newly discovered evidence claim. Each claim will be discussed in detail below. But first the Court will address Respondent's argument that Petitioner's § 2254 petition was untimely filed.

### III.  Timeliness

An inmate in state custody has one year to file a § 2254 habeas petition. *See* 28 U.S.C. § 2244(d)(1). The one-year clock starts running from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).   The statute also includes a tolling provision, which provides that, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ."  28 U.S.C. § 2244(d)(2).

Here, the parties agree that the relevant trigger for the limitation period is the date the state court judgment became final—i.e., § 2244(d)(1)(A).  (Doc. 9 at 2-5; Doc. 11 at 2).  The parties also agree that the judgment became final on December 18, 2019.  (*Id.*).  That is when the ninety-day window closed for Petitioner to seek review in the U.S. Supreme Court.  (Doc. 9-6).  The one-year clock for filing a § 2254 petition

started to run the next day, on December 19, 2019.  *See* Fed. R. Civ. P. 6(a)(1) (stating that when computing a time period for the occurrence of an event specified by the law, the Court should "exclude the day of the event that triggers the period").

The clock continued to run until December 14, 2020, when Petitioner filed his Rule 3.850 motion in state court.  (Doc. 9-7).  The filing of that motion tolled the one-year clock, and when it was filed 361 days had elapsed (December 19, 2019, to December 14, 2020).[3]  That motion was pending until May 22, 2023, which is when the First DCA's mandate issued on Petitioner's appeal from the denial of his Rule 3.850 motion. (Doc. 9-15 at 1); *see generally Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) (holding that when a Florida petitioner appeals the trial court's denial of postconviction motion, the motion remains pending until the appellate court's mandate).

---

[3] Respondent argues that the one-year clock stopped at 362 days.  (Doc. 9 at 3).  Respondent either misapplied Rule 6(a) by counting the day of the event that triggered the federal clock (i.e., the finality date) or erroneously counted the day that Petitioner filed the tolling motion.

8

The one-year clock started to tick again on May 23, 2023, the day after the mandate issued.  Petitioner filed his § 2254 petition three days later on May 26, 2023.  (Doc. 1 at 20, 24).[4]  Because only 364 days of the one-year limitations period had passed (361 + 3 = 364) when Petitioner filed his § 2254 petition, it was timely.  Having found that the petition was timely, the Court will now turn to a discussion of Petitioner's claims.

## IV.   Legal Standard for 28 U.S.C. § 2254 Petitions

Under § 2254(d), a federal court may invalidate a state criminal conviction only if a state court decision on the merits (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  This is a "highly deferential standard" that "demands that state-court decisions be given the benefit of the doubt[.]"  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  When considering a state prisoner's

---

[4] Again, Respondent's calculation is one day off.  Respondent argues that four days passed between issuance of the mandate and the date Petitioner filed his § 2254 petition.  (Doc. 9 at 4-5).

habeas petition under § 2254(d), a federal court is not sitting as an appellate court with the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal").

To be contrary to clearly established federal law under § 2254(d)(1), "the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up). And to meet the unreasonable application standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (cleaned up). Rather, the state court's application of federal law must be "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up). This standard reflects that the writ of habeas corpus is an "extraordinary remedy that guards only

10

against extreme malfunctions in the state criminal justice systems."
*Ramirez*, 596 U.S. at 377 (cleaned up).

## V.   Discussion

## A.   Ineffective assistance of counsel claims

In his § 2254 petition, Petitioner has raised two ineffective assistance of trial counsel claims. Such claims are governed by the standard found in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a *Strickland* claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted. *Id.* at 687. Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance. *Id.* at 694. To make the prejudice

11

showing, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).[5]

Having set forth the applicable standard, the Court will now apply it to Petitioner's ineffective assistance of counsel claims.

### 1. Ground One: "Counsel was ineffective for interfering with Petitioner's right to testify."

In Ground One, Petitioner claims counsel provided ineffective assistance by advising him not to testify at trial. (Doc. 1 at 22). According to Petitioner, absent counsel's advice, he would have testified that he did not reach into Ms. Williams' vehicle to grab her phone (thus, negating the entry element of the burglary charge in Count I) and that he accidentally struck her vehicle with his truck (thus, negating the intent element of the aggravated battery with a deadly weapon charge in Count II).

---

[5] Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential." *Richter*, 562 U.S. at 105. And when—in a case like the current one— "the two apply in tandem, review is doubly" deferential. *Id.* (cleaned up). The Supreme Court has warned that "habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)." *Id.* Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

12

Petitioner says that if the jury had heard this testimony from him, then there is a reasonable probability the jury would have acquitted him on Counts I and II.

Petitioner presented this claim in his Rule 3.850 motion. (Doc. 9-7 at 27). At the evidentiary hearing on the Rule 3.850 motion, Petitioner's trial counsel, David Collins, testified. (Doc. 9-11 at 44). Attorney Collins explained that he had over thirty years of experience and had handled approximately 500 criminal trials. (*Id.* at 45-46). Attorney Collins stated that he and Petitioner had discussed the possibility of Petitioner testifying. (*Id.* at 47, 49, 58). Attorney Collins testified that he had learned during the representation that Petitioner had at least five prior felony convictions, but he could not recall the specific number of convictions. (*Id.* at 46, 48, 56-58). Attorney Collins further testified that neither of the victims had a felony record, although he said it was possible Mr. Moore may have had one conviction. (*Id.* at 56).

Attorney Collins explained that in his opinion Petitioner had a tough case because there was a video of the incident. After the video was played for the jury and after Attorney Collins had cross-examined the

13

victims, Attorney Collins and Petitioner discussed whether Petitioner should testify. (*Id.* at 49, 58). In Attorney Collins' opinion, Petitioner's testimony was "not going to help that much," and his prior convictions would have given the jury a reason to discredit his testimony. (*Id.* at 47, 61-62).

Petitioner also testified at the evidentiary hearing on his Rule 3.850 motion. (*Id.* at 22). He acknowledged that he had eight prior felony convictions from five criminal cases,[6] as well as a misdemeanor conviction for a crime of dishonesty. (*Id.* at 34-37). Petitioner stated that Attorney Collins advised him against testifying because the prosecutor would bring up his criminal convictions and "eat [him] alive." (*Id.* at 28). According to Petitioner, he would have testified that Ms. Williams held her phone outside of the window and Petitioner knocked it from her hand. (*Id.* at 31-32, 38-40). Moreover, Petitioner said he would have testified that he accidentally crashed his truck into Ms. Williams' vehicle. (*Id.* at 32-33).

---

[6] Several of the cases involved multiple felony counts.

The state trial court rejected Petitioner's claim, finding that he had not satisfied the *Strickland* standard. (Doc. 9-11 at 102-104; Doc. 9-12). In reaching that conclusion, the court explained that it was reasonable for Attorney Collins to advise Petitioner that testifying would have exposed the jury to his prior convictions, which could have adversely impacted the jury's assessment of his credibility. (Doc. 9-11 at 102-03). The court further found that Petitioner's testimony about what he would have told the jury had he testified was "wholly incredible." (*Id.* at 104). Thus, the court effectively found that there was no reasonable probability the result would have been different had Petitioner testified.

Petitioner appealed the trial court's denial of his Rule 3.850 motion, and the First DCA affirmed. (Doc. 9-15).[7] In his § 2254 petition, Petitioner claims that the state court's decision involved an unreasonable

---

[7] The First DCA explained its reasons for rejecting two of Petitioner's postconviction claims, but it did not explain its reasoning on this particular claim of ineffective assistance of counsel. (Doc. 9-15 at 4-7). Because the First DCA's decision on this claim was not accompanied by reasons, the Court will look through to the trial court's reasons for rejecting Petitioner's claim. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (holding that where a reviewing state court's decision is not accompanied by reasons, the federal habeas court must "look through" the unexplained decision to the trial court's rationale).

15

application of *Strickland*.[8]  Thus, "the question [for this Court] is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" for attorney performance.  *Richter*, 562 U.S. at 105.  The answer to that question is "yes"—there is such a reasonable argument here.  And that means Petitioner is not entitled to habeas relief on Ground One.

A criminal defendant has a right to testify at trial.  *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc).  That right is a personal one that can only be waived by the defendant.  *Id.*  Defense counsel is responsible for informing "the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."  *Id.* at 1533.  Additionally,

---

[8] To the extent Petitioner has argued that the state court decision was "contrary to" federal law, he is plainly incorrect.  A state court's decision is only "contrary to" federal law "if the decision applies a legal principle substantially different from the relevant precedent of the Supreme Court."  *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1293 (11th Cir. 2007) (cleaned up).  Thus, if the "state court correctly identifies the governing precedent, that court's decision cannot be said to be 'contrary to' federal law."  *Id.* (cleaned up).  Here, the state court correctly identified the governing Supreme Court precedent and legal standard (i.e., *Strickland*'s deficient performance and prejudice standard).  (*See, e.g.*, Doc. 9-11 at 100, 102).

if defense counsel "believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." *Id.* An attorney generally does not provide ineffective assistance by advising a defendant against testifying where testifying would open the defendant up to cross examination regarding his prior felony convictions. *See Lisbon v. United States*, 758 F. App'x 780, 783-84 (11th Cir. 2018) (rejecting argument that counsel provided ineffective assistance by advising defendant with a prior felony conviction not to testify because the conviction could be used as impeachment); *see also Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 838 (11th Cir. 2018) (same).

Here, the state court reasonably found that Attorney Collins did not perform deficiently by advising Petitioner against testifying. It is apparent from the record that Attorney Collins informed Petitioner of his right to testify and discussed the matter with him. (Doc. 9-2 at 162; Doc. 9-11 at 27-28). It is also apparent that Petitioner understood that the decision regarding whether to testify was his to make. Indeed, Petitioner confirmed to the trial judge that he understood his right to testify, that

17

he had discussed the issue with Attorney Collins, and that he had decided to waive that right. (Doc. 9-2 at 153, 162). Thus, this is not a case where "defense counsel refused to accept the defendant's decision to testify and would not call him to the stand[.]" *Teague*, 953 F.2d at 1534. Nor is it a case where "defense counsel never informed the defendant of the right to testify[.]" *Id.*

Instead, this is a case where an experienced defense attorney advised a client that he believed testifying was a bad idea because it would allow the jury to learn Petitioner was a multi-convicted felon (who also had a misdemeanor crime of dishonesty conviction) without adding much in the way of new information.[9] And as the Eleventh Circuit has recognized, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed *should*, advise the client in the strongest possible terms not to testify." *Id.* at 1533 (emphasis added).

---

[9] Under Florida law, the prosecutor could have impeached Petitioner with his prior convictions had he testified. *See* Fla. Stat. § 90.610(1) ("A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year . . . , or if the crime involved dishonesty or a false statement regardless of the punishment . . . .").

18

The fact that Petitioner now wishes he had testified does not mean that Attorney Collins performed deficiently by advising Petitioner of his belief that the risks of testifying outweighed the benefits. Indeed, the Court is confident that an overwhelming majority of experienced defense attorneys would have given Petitioner the same advice under the circumstances of this case.

Not only has Petitioner failed to show that Attorney Collins performed deficiently by advising him against testifying, but Petitioner also has failed to show that prejudice resulted. The state court reasonably concluded that there was no reasonable probability that a jury would have acquitted Petitioner had he testified in the manner he proposed at the evidentiary hearing on his Rule 3.850 motion. Having reviewed the record, the Court does not believe the state court erred by finding that Petitioner's testimony was not credible and appeared to have been generated "to conform with evidence he already knew." Petitioner's proposed testimony was inconsistent with other evidence in the record, and it is hard to believe a jury would have credited it. (Doc. 9-11 at 104). Accordingly, Petitioner has not shown that the state court unreasonably

19

applied *Strickland* to his claim that counsel performed ineffectively by advising him against testifying. *See Jones v. Sec'y, Dep't of Corr.*, 487 F. App'x 563, 567 (11th Cir. 2012) (finding that habeas petitioner failed to show counsel acted unreasonably by advising him not to testify when he had five prior felony convictions that the jury could have learned of on cross examination); *see also Teague*, 953 F.2d at 1533 n.9 (recognizing that the possibility "the defendant might be prejudiced by revelation of prior convictions" is a "good tactical reason[] why it may not be best for the defendant to testify"). As a result, Petitioner is not entitled to habeas relief on Ground One.

> **2.   Ground Two: "Counsel was ineffective for failing to object to the jury being instructed on burglary of an OCCUPIED conveyance, which was not charged in the information and resulted in conviction of an uncharged offense."**

In Ground Two, Petitioner raises an ineffective assistance claim involving the jury instructions and verdict form. More specifically, Petitioner argues that counsel performed ineffectively by not objecting when the trial judge included in the jury instructions and on the verdict form the lesser offense of burglary of an occupied conveyance. (Doc. 1 at

22-23).  To understand this argument, it is necessary to look at the information, the jury instructions, and the verdict form.

Let's start with the information.  Count I of the information charged Petitioner as follows:

> On or about May 25, 2017, [Petitioner] did unlawfully enter or remain in a conveyance, an Infiniti motor vehicle, the property of Lanedra S. Williams, with the intent to commit the offense of theft, criminal mischief, assault, battery, tampering, or some offense therein, and in the course of committing the offense did make an assault or a battery upon a person, Lanedra Williams, contrary to Section 810.02(2)(a), Florida Statutes.

(Doc. 9-1 at 22).  Put simply, in Count I Petitioner was charged with burglary of a conveyance with assault or battery—a first-degree felony under Florida law.

In the jury instructions, the jurors were informed of the elements of the crime of burglary.  (Doc. 9-2 at 174-75).  The jurors were then instructed that if they found Petitioner had committed a burglary, then they needed to determine whether (1) Petitioner had battered or assaulted anyone during the burglary, or (2) whether anyone was in the conveyance (i.e., the vehicle) when Defendant entered it.  (*Id.* at 176).

The jurors were also instructed on the lesser offenses of burglary of a conveyance, assault, and battery. (*Id.* at 177-78).

On the verdict form, the jurors were directed to choose one of the following options as to Count I:

> a.  The defendant is guilty of Burglary.
>
> b.  The defendant is guilty of Battery.
>
> c.  The defendant is guilty of Assault.
>
> d.  The defendant is not guilty.

(Doc. 9-1 at 59). The verdict form then contained an interrogatory instructing the jurors as follows regarding Count I:

> If you have chosen a. [the defendant is guilty of Burglary], please check all options that have been proven beyond a reasonable doubt in the course of committing the Burglary:
>
> > i.    Defendant committed a battery.
> > ii.   Defendant committed an assault.
> > iii.  There was a human being in the conveyance at the time of the burglary.

(*Id.*). Petitioner's counsel did not object to the jury instructions or the verdict form. (Doc. 9-2 at 229-31). Regarding Count I, the jury found Petitioner guilty of burglary and then on the interrogatory answered that

22

a human being was in the conveyance during the burglary. (Doc. 9-1 at 59-60).

On direct appeal, Petitioner argued that the trial judge erred by instructing the jury on the lesser offense of burglary of an occupied conveyance because that offense was not specifically charged in the information. (Doc. 9-3). The First DCA rejected that argument. (Doc. 9-6 at 3). Petitioner then filed a Rule 3.850 motion, which argued that counsel was ineffective for failing to object to the jury instruction and verdict form regarding the lesser offense of burglary of an occupied conveyance. (Doc. 9-7 at 21-22).

During the evidentiary hearing on Petitioner's Rule 3.850 motion, Attorney Collins testified about his failure to object to the jury instructions and verdict form. Although Attorney Collins could not specifically recall why he did not object to the instructions and verdict form in this case, he explained his general practice as a defense attorney was "if we can get lessers, the more lessers the better." (Doc. 9-11 at 54). Attorney Collins further explained that he believed that it was generally best to provide the jury with as many lesser offenses as possible in an

23

effort to avoid his client being convicted of the most serious offense.[10]
(*Id.*).

At the conclusion of the evidentiary hearing, the trial court found that Attorney Collins had not performed deficiently by failing to object. (Doc. 9-11 at 101-02).   In reaching this conclusion, the trial court explained that it was a strategic decision by Attorney Collins—an experienced defense attorney—to provide the jury with options "of where they can go other than the charged offense." (*Id.* at 101).  The trial court further found that Attorney Collins' failure to object did not prejudice Petitioner.  More specifically, the court found that if an objection had been lodged by Attorney Collins, then it was highly likely the trial judge would have permitted the prosecution to amend the information to add the occupied conveyance language. (*Id.* at 101-02, 67-68).  Thus, the court found that Petitioner had not shown a reasonable probability that the

---

[10] Count I of the information charged Petitioner with burglary of a conveyance with assault and battery, which is a first degree felony. (Doc. 9-1 at 22); Fla. Stat. § 810.02(2)(a).  The offense of burglary of an occupied conveyance is a second degree felony.  (Doc. 9-2 at 238, 242); Fla. Stat. § 810.02(3)(d).

24

jury would have reached a different conclusion if Attorney Collins had objected to the jury instructions and verdict form. (*Id.* at 101-02).

Petitioner raised this issue in his appeal from the denial of his Rule 3.850 motion. (Doc. 9-13 at 35-41). The First DCA found Petitioner's argument unpersuasive and affirmed. (Doc. 9-15).[11] Petitioner now challenges that finding in his § 2254 petition. Although the state court found that Petitioner had satisfied neither the deficient performance nor the prejudice prong of *Strickland*, this Court will limit its discussion to the prejudice prong because it is clear Petitioner has failed to meet it.[12] *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court

---

[11] The First DCA explained its reasons for rejecting two of Petitioner's postconviction claims, but it did not explain its reasoning on this claim of ineffective assistance of counsel. (Doc. 9-15 at 4-7). Because the First DCA's decision on this claim was not accompanied by reasons, the Court will look through to the trial court's reasons for rejecting Petitioner's claim. *See Wilson*, 584 U.S. at 125.

[12] It bears mentioning, however, that Attorney Collins' decision not to object to the inclusion of a lesser offense in the jury instructions and the verdict form appears to have been a reasonable strategy decision. *See Griffith v. Mitchem*, No. 4:10-0397, 2012 WL 2357936, at *8 (N.D. Ala. Apr. 9, 2012) (finding that defense counsel's failure to object to a lesser offense instruction was "reasonable trial strategy" because it provided the jury with a "compromise option" and afforded the petitioner "a better chance to be acquitted" on the most serious offense (cleaned up)).

need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

The prejudice prong of *Strickland* requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.* Because the state court resolved Petitioner's ineffective assistance claim on the merits, this Court's review is limited to deciding "whether the state court's application" of *Strickland*'s prejudice prong "was unreasonable." *Id.* Thus, to prevail Petitioner "must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1263-64 (11th Cir. 2020) (cleaned up).

Petitioner has not made the requisite showing here. As an initial matter this Court defers to the state court's determination that Florida law would have permitted the prosecution to amend the information at

26

trial to conform to the evidence regarding the occupancy of the conveyance. *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (recognizing that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters"). Moreover, it is well recognized that "under Florida law, the state is not precluded from amending the charging document, even during trial, to conform with the evidence, absent a showing of prejudice to the substantial rights of the defendant." *Pinkney v. Sec'y, DOC*, No. 2:10-cv-744, 2014 WL 4542962, at *14 (M.D. Fla. Sept. 12, 2024); *see also Rivera v. State*, 745 So.2d 343, 345 (Fla. 4th DCA 1999) (recognizing that "it is well-settled that the state may amend its information during trial, either as to substantive or non-substantive matters, unless the defendant is prejudiced thereby"). Consistent with that principle of Florida law, the state court found that if Attorney Collins had objected on the grounds that the information did not charge that the conveyance was occupied, then it is highly likely the prosecution would have moved to amend the information to include such language, and it is highly likely the trial

27

judge would have permitted the amendment under Florida law[13]—in which case the jury instructions and verdict form would have still included the occupied conveyance language.  Thus, the state court reasonably concluded that Petitioner had not met his burden of showing prejudice from Attorney Collins' failure to object.  *See Perrott v. Sec'y, Fla. Dep't of Corr.*, 480 F. App'x 978, 982-83 (11th Cir. 2012) (finding counsel was not ineffective for failing to object to jury instructions that included language that was not in the information because the prosecution could have amended the information during trial and doing so would have caused no prejudice to the petitioner).  Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

---

[13] As the state court reasonably found during the hearing on Petitioner's Rule 3.850 motion (Doc. 9-11 at 66-68), permitting the amendment would not have prejudiced Petitioner because Petitioner and his counsel were aware of the evidence showing the vehicle was occupied and were aware of the prosecution's argument that the vehicle was occupied (indeed, this was not a disputed fact at trial).  Thus, amending the information would not have introduced new evidence or altered the prosecution's theory of the case.  Moreover, there was substantial (undisputed) evidence in the record showing that the vehicle was occupied by Ms. Williams.  This is plainly not a case where an unobjected-to error in the jury instructions or verdict form resulted in a verdict that was inconsistent with the evidence.

**B.**     **Ground Three: "The postconviction court's method, and Florida's general practice, in resolving newly discovered evidence claims based on recantation of a witness violated the Sixth Amendment right to a fair trial and right to present exculpatory evidence/witness, and the Fourteenth Amendment's Due Process Clause."**

In Ground Three, Petitioner argues that the way the state court resolved his newly discovered evidence claim violated his rights under the U.S. Constitution.  (Doc. 1 at 23-24).  More specifically, Petitioner claims that the state court violated the Sixth and Fourteenth Amendments by finding that Ms. Williams' recantation[14] at the Rule 3.850 hearing lacked credibility.  According to Petitioner, a jury should have been responsible for assessing the credibility of Ms. Williams' recantation.

Respondent argues that Petitioner's claim is unexhausted and procedurally defaulted because Petitioner failed to present the federal

---

[14] Ms. Williams testified at the Rule 3.850 hearing that Petitioner did not reach into the vehicle to grab her phone. (Doc. 9-11 at 7-9).  Instead, she testified at the Rule 3.850 hearing that she had the phone in her hand at the window of the vehicle when Petitioner grabbed it.  (*Id.* at 8).  According to Ms. Williams' testimony at the Rule 3.850 hearing, she lied at trial, lied to the police, and lied in her deposition when she said that the phone was inside the vehicle when Petitioner grabbed it. (*Id.* at 10-18).

29

nature of this claim to the First DCA during his appeal from the denial of the Rule 3.850 motion.  (Doc. 9 at 24-26).  Petitioner concedes that the claim is unexhausted.  (Doc. 11 at 17-18).  But Petitioner argues that an exception to the exhaustion requirement applies.  As explained below, the Court agrees with Respondent that the claim is unexhausted and that no exceptions apply.

### 1.    Overview of exhaustion

The exhaustion requirement is found in § 2254(b)(1), which provides that an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State[.]"  This means that a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).   The exhaustion requirement is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. 509, 518 (1982).

30

To satisfy the exhaustion requirement, a petitioner must have "fairly presented" the substance of his federal claim to the state courts.[15] *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012). A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (cleaned up). Exhaustion is not present "merely" because "the federal habeas petitioner has been through the state courts nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (cleaned up). Instead, exhaustion requires that the "ground relied upon . . . be presented face-up and squarely; the federal question must be plainly defined." *Kelley*, 377 F.3d at 1345. "[A] petitioner with a claim

---

[15] In habeas cases involving Florida prisoners, "claims for postconviction relief are exhausted once they are appealed to the state district court of appeal. They need not be appealed to the Florida Supreme Court in order to be considered exhausted for federal habeas purposes." *Barritt v. Sec'y Fla. Dep't of Corr.*, 968 F.3d 1246, 1249 n.3 (11th Cir. 2020).

31

that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).

If a petitioner has not exhausted his claim and it "is clear from state law that any future attempts at exhaustion would be futile[,]" then federal courts "may treat unexhausted claims as procedurally defaulted[.]" *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). And a procedurally defaulted claim will not be considered by a federal habeas court unless "a petitioner can show (1) cause for the default and (2) actual prejudice resulting from the alleged constitutional violation." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (cleaned up).

### 2. Ground Three is unexhausted and procedurally defaulted

Petitioner admits (and the record confirms) that he did not exhaust the claims raised in Ground Three. (Doc. 1 at 13-14, 17; Doc. 11 at 17). In his First DCA appeal from the denial of his Rule 3.850 motion, Petitioner argued that the weight of the evidence did not support the trial court's finding that Ms. Williams' recantation testimony was not credible.

32

(Doc. 9-13 at 45-50). The argument focused exclusively on state law. Because Petitioner did not fairly present the federal constitutional claims raised in Ground Three to the state courts before raising them in his § 2254 petition, they are unexhausted.

Petitioner could not now return to state court to exhaust the federal claims because Florida's postconviction procedures do not permit a second appeal from the denial of a Rule 3.850 motion. *See* Fla. R. Crim. P. 3.850(m) (authorizing an appeal from the final order disposing of the Rule 3.850 motion); Fla. R. App. P. 9.141(b) (setting out procedures for appeals from postconviction proceedings under Rule 3.850). Further, any attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as successive. Fla. R. Crim. P. 3.850(j)(2) (authorizing dismissal of a second Rule 3.850 motion if the court finds that it fails to allege new or different ground for relief and the prior determination was on the merits). As a result, the unexhausted claims raised in Ground Three have been procedurally defaulted.

33

### 3.    No exceptions apply

Although he admits the claims in Ground Three are unexhausted, Petitioner urges this Court to review them based on two exceptions to exhaustion found in § 2254(b)(1)(B).  (Doc. 1 at 17; Doc. 11 at 18-20). Under § 2254(b)(1)(B), a petitioner can proceed on an unexhausted claim if he shows that "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."   28 U.S.C. § 2254(b)(1)(B)(i)-(ii). Petitioner's argument that these exceptions apply is unpersuasive.

Looking first to § 2254(b)(1)(B)(i), there is "an absence of available State corrective process" only if "there is no *opportunity* to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (emphasis added).  A petitioner does not qualify for this exception unless he shows that state court procedures were inadequate to adjudicate the merits of his claim. *Id.* at 4.

Rule 3.850 of the Florida Rules of Criminal Procedure provides a vehicle for defendants to challenge their convictions (on state and federal

34

law grounds) in Florida state court based on claims of newly discovered evidence involving recanted testimony. *See, e.g.*, *Keen v. State*, 855 So. 2d 117, 118 (Fla. 2d DCA 2003) (recognizing that allegation of recanted testimony could be raised in a Rule 3.850 motion). And Florida law provides defendants with the ability to seek appellate review of a trial court's adjudication of such challenges. Fla. R. App. P. 9.141(b). Because Florida law provided Petitioner with the "opportunity to obtain redress in state court[,]" and the state court process was not "so clearly deficient as to render futile any effort to obtain relief[,]" *Duckworth*, 454 U.S. at 3, the exception found in § 2254(b)(1)(B)(i) does not apply here.

Similarly, Petitioner has not shown that the exception in § 2254(b)(1)(B)(ii) applies here. That exception applies if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). State court remedies "will be found ineffective and a federal habeas petitioner will be excused from exhausting them in the case of unreasonable, unexplained state delays in acting on the petitioner's motion for state relief." *Cook v. Fla. Parole & Prob. Comm'n*, 749 F.2d 678, 680 (11th Cir. 1985). Here, Petitioner

35

has not shown that any circumstances existed that rendered the state court process ineffective to protect his rights. Petitioner has not shown any unreasonable delays in the state court resolution of his motion, nor has he pointed to anything else that would support a finding that the state court process was ineffective.

Having concluded that neither of the exceptions found in § 2254(b)(1)(B)(i)-(ii) apply, the Court will turn to Petitioner's argument that the unexhausted claims should not be deemed procedurally defaulted because of the exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 1 at 17; Doc. 11 at 20-21). Unfortunately for Petitioner, the *Martinez* exception is inapplicable. That is so because *Martinez* applies only to procedurally defaulted ineffective assistance of counsel claims. *See Lambrix v. Sec'y, Fla. Dept. of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014) (explaining that "the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings"); *see also Davila v. Davis*, 582 U.S. 521, 530 (2017) (recognizing that *Martinez* created a "narrow exception that applies only to claims of ineffective assistance of counsel" (cleaned up)). Petitioner's claims in Ground Three

36

are not ineffective assistance of counsel claims. *Martinez*, therefore, does not excuse Petitioner's procedural default.

To the extent Petitioner has also argued that his procedural default should be excused under the traditional cause and prejudice standard, the argument lacks merit. A federal court may not review a procedurally defaulted claim "absent a showing of cause for the default and actual prejudice resulting from the errors of which he complains." *Alexander v. Dugger*, 841 F.2d 371, 373 (11th Cir. 1988). "Cause" in this context "must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (cleaned up).

In terms of cause, Petitioner argues that he was "simply unable to raise the issue because it materialized simultaneously with the court's final ruling on the matter." (Doc. 11 at 21). Petitioner's argument is insufficient to show cause. The state court record demonstrates that in his state postconviction appeal to the First DCA Petitioner challenged (on state law grounds) the trial court's rejection of his newly discovered evidence claim involving Ms. Williams' recanted testimony. (Doc. 9-13

37

at 45-50). Petitioner could have, and should have, presented his federal constitutional challenges to the First DCA at that time. He has pointed to nothing external to him that would constitute cause for his failure to do so. Accordingly, Petitioner has failed to show cause and prejudice as required to excuse his procedural default.[16]

Ground Three is unexhausted and procedurally defaulted, and Petitioner has not shown that an exception to these procedural bars applies. Thus, Petitioner is not entitled to habeas relief on Ground Three.

## VI.   Conclusion

For the reasons above, Petitioner's 28 U.S.C. § 2254 habeas corpus petition lacks merit.

---

[16] Even if Ground Three was not procedurally defaulted, Petitioner would not be entitled to habeas relief. In Ground Three, Petitioner is attacking the postconviction proceeding as opposed to the underlying conviction itself. And defects in state postconviction proceedings do not provide a basis for habeas relief. *See Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (explaining that defects in state postconviction proceedings "do not provide a basis for habeas relief" because "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself"); *see also Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) (stating that "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief").

## VII.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing § 2254 Cases. A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability. Rule 11(b), Rules Governing § 2254 Cases.

Section 2253(c) "permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327). Petitioner here cannot make

39

that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1. Petitioner's 28 U.S.C. § 2254 petition (Doc. 1) be **DENIED** and this case be **DISMISSED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 23rd day of June 2026.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>

An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

41